UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHANE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:08CV574 CAS |
| | ) (TIA) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

## I. Procedural History

On December 1, 2004, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning May 15, 2004 due to diabetes mellitus and diabetic neuropathy. (Tr. 63-65, 397-400) The applications were denied, and Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (Tr. 54-59, 392-96) On November 21, 2006, Plaintiff testified at a hearing before an ALJ. (Tr. 21-46) In a decision dated March 22, 2007, the ALJ determined that Plaintiff was not under a disability at any time through the date of decision. (Tr. 12-20) On June 10, 2008, the Appeals Council denied Plaintiff's request for review. (Tr. 4-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Upon questioning by his

attorney, Plaintiff testified that he was thirty-years-old and had completed the eleventh grade. He did not obtain a GED; however, he had received some vocational training in dry-walling and landscaping. Plaintiff last worked for Nationwide Drywall from May 2006 to September 2006. He worked one or two days a week and received wages totaling $1,438. In addition, Plaintiff worked with the City of Irondale from December 2005 to May 2006 as a meter reader and occasional water line repairman. Plaintiff testified that he worked three or four days a month, with wages totaling $1,173. From March 2005 to November 2005, Plaintiff received a gross income of $6,502.40 from Reed Lumber Company, where he worked 30 to 36 hours a week. (Tr. 26-30)

With regard to his drywall job, Plaintiff testified that he could only work one or two days a week because he tired easily and was not allowed to climb ladders, which was a necessary part of drywall hanging. Plaintiff stopped working for the City of Irondale because he was frequently sick when the City called him to work. In addition, Plaintiff testified that he had difficulty getting up and down while reading the meters because he had very little feeling in his legs. Further, Plaintiff did not have time to take lunches, and he was required to eat three full meals a day, plus snacks. He testified that he frequently skipped meals while working at Reed Lumber, which negatively affected his blood sugars. (Tr. 30-32)

Plaintiff was diagnosed with diabetes when he was 18 years old. His treating physician was Dr. Huckgood, and Plaintiff testified that he was not doing well with his present treatment. Specifically, Plaintiff stated that everything Plaintiff has tried to regulate his blood sugars has not worked. Although Plaintiff testified to taking his medication regularly, he did acknowledge that in 2004 he was not compliant due to financial problems causing difficulties in purchasing the medication. Plaintiff followed a diabetic, 2400 calorie diet. However, the variations in his blood sugars caused

him to become shaky, weak, and nauseous when his blood sugars were low. He also became violent and had lapses in memory. When his blood sugars were high, he became tense and could hardly move. Plaintiff also became aggravated and agitated very easily. (Tr. 32-36)

Diabetes also affected Plaintiff's physical health. Plaintiff testified that he suffered from diabetic neuropathy in his legs, from his feet to his knees. Plaintiff did not have any feeling in his feet, and he experienced difficulties walking and standing. Plaintiff testified that he stumbled a lot while walking. He believed that he could walk about 150 feet before needing to sit down, and only 10 to 15 feet before stumbling. In addition, he experienced a continuous ache in his legs when driving to the hearing. With regard to standing, Plaintiff stated that he could only stand for 5 or 10 minutes before his knees gave out on him. Plaintiff also had diabetic gastritis, for which he took Protonix to regulate the acid in his stomach. However, he continued to experience acid indigestion, heartburn, and vomiting. In addition, Plaintiff had problems remembering things and required frequent reminders. He would lose feeling in his hands, making it difficult to grip and hold onto things. The pain in his feet and hands caused him to lose sleep. Plaintiff had quit smoking about six months before the hearing, but his sugars did not improve as a result. Further, Plaintiff stated that he had difficulty with urination but that he had to go frequently, about 2 to 3 times per hour. He testified to having very low energy levels, which resulted in sleeping 7 to 8 times a day for about 15 minutes each time. (Tr. 36-40)

Plaintiff testified that he lived in a mobile home with his girlfriend and her two daughters, ages 7 and 4. Plaintiff's girlfriend did all the housework, shopping, and yard work, although Plaintiff occasionally moved the laundry from the washer to the dryer. Plaintiff played cards with friends on occasion. Plaintiff stated, however, that he had problems holding the cards because he could not feel

3

or grip them with his finger tips. Plaintiff was able to brush his teeth and shave. However, his girlfriend shaved him most of the time, as well as bathed him due to his inability to move his arms and hands to reach this back and lower legs. When sitting, Plaintiff's legs fell asleep, and his backside became numb and sore. His legs went to sleep after only 2 to 3 minutes of sitting, and his backside became numb after about 15 to 20 minutes. With regard to lifting and carrying, Plaintiff testified that he was unable to pick up a log and put it into the stove. A typical log weighed 3 to 4 pounds. (Tr. 40-43)

Plaintiff also acknowledged alcohol use in 2004, before one of his low blood sugar episodes. However, he denied drinking too much. He stated that he would have only one drink three or four times a year. He denied habitual drinking, binge drinking or any other problems with drugs or alcohol. (Tr. 43-44)

The ALJ also questioned Plaintiff, who stated that his household income consisted of his girlfriend's child support payments and food stamps. He did not drive because he had passed out while driving. Friends would drive him to work. (Tr. 45)

In a Function Report – Adult, Plaintiff reported that, during a typical day, he woke up; drank coffee and ate breakfast; picked up the yard and took out trash; watched TV or washed dishes; lay down and took a nap; ate lunch; played cards; listened to the radio; ate dinner; washed dishes; and watched a movie or played cards until bed. He also cared for his two future step-children by getting them drinks, changing their diapers, and helping fix meals. Plaintiff was no longer able to work 8 to 12-hour-days, as trying to work more than 2 to 3 hours would put him in the hospital or in bed for several days. He stated that his pain kept him awake at night. He was too weak to dress himself and too inflexible to bathe all areas. He became shaky and weak when feeding himself. He also

4

frequently forgot to shave and forgot when he last showered or brushed his teeth. He also needed reminders to take his medication. Plaintiff stated that he did not prepare meals or do yard work; however, he folded laundry, did dishes, and took out the trash. He shopped for diapers and groceries only when necessary. Plaintiff's hobbies included watching TV, hunting, fishing, and softball. Plaintiff was unable to do most of these things. He played poker 4 or 5 times a year, and he regularly visited his doctor and his parents. Plaintiff's condition affected most of his abilities. Plaintiff opined that he could walk 75 to 100 yards and that he needed to rest for 5 to 10 minutes before resuming. He was able to pay attention for 5 to 10 minutes and did not finish what he started. He could follow written instructions but not spoken instructions. Plaintiff reported that he got along well with authority figures and could handle stress very well. However, he did not handle changes in routine well. Plaintiff stated that when his blood sugar was low, he acted like a dog by barking, growling, and trying to bite people. (Tr. 83-90)

### III. Medical Evidence

On November 23, 2003, Plaintiff was brought by ambulance to the Emergency Room ("ER") complaining of low blood sugar. Plaintiff was unresponsive and had a blood sugar level of 44. Plaintiff was discharged with a diagnosis of hypoglycemia and instructions regarding diet, insulin, and blood glucose monitoring. (Tr. 147-49)

Between January 2004 and June 2004, Plaintiff presented to the ER on several occasions with high blood sugars which included symptoms of lethargy, unresponsiveness, and combativeness. (Tr. 151, 163, 173-74) Diagnoses included hyperglycemia, dehydration, uncontrolled diabetes mellitus, and peripheral neuropathy. (Tr. 154, 165, 174) On September 11, 2004, Plaintiff returned to the ER complaining of vomiting and hyperglycemia. Plaintiff was admitted to the hospital and received IV

5

fluids, insulin, and medications. Diagnosis upon discharge was acute gastritis, vomiting, and insulin dependent diabetes mellitus. (Tr. 178-80) Plaintiff again presented to the ER on October 29, 2004, after his wife found him non-responsive on the floor. (Tr. 189) On November 9, 2004, Plaintiff returned to the ER with complaints of a reddened area on his right forearm and numbness in his left hand and fingers. Plaintiff's final diagnosis was tendonitis in the right thumb. (Tr. 196-98) Plaintiff was also treated by the Washington County Ambulance District on several occasions for symptoms stemming from low blood sugar. (Tr. 242-62)

On June 26, 2004, Dr. Jade Homsi saw Plaintiff for a follow-up examination of his diabetes and left shoulder pain. Dr. Homsi indicated that he last saw Plaintiff in April and that an MRI of his left shoulder revealed bursitis of his biceps muscle. Plaintiff reported no improvement despite taking Vioxx. In addition, Plaintiff stated that he reduced his amount of insulin because he had some problems with hypoglycemia. Plaintiff did not regularly check his glucose at home. Dr. Homsi assessed left shoulder pain; diabetes; neuropathic pain; hypothyroidism; proteinuria; and tobacco abuse. He referred Plaintiff to Orthopedics and physical therapy and instructed Plaintiff to check his blood glucose for at least five to seven days before his next follow up so that the clinic could make insulin dose adjustments. Dr. Homsi also continued Plaintiff on his medication regimen of Neurontin and Synthroid, adjusted his Prinivil, and counseled him on smoking cessation. (Tr. 137)

In September 2004, Plaintiff reported that he had experience pain in his hands for at least one year. He rated the pain as an 8 on a scale of 1-10 and indicated that nothing relieved the pain. The examining physician diagnosed diabetes mellitus, hypothyroidism, and smoking. (Tr. 141) In October 2004, Plaintiff's labs were abnormal, warranting a change in medication. In December of that same year, Plaintiff complained of burning pain in his hands and feet, as well as chronic back pain, which

6

prevented him from sleeping. His physician noted Plaintiff's history of neuropathy. (Tr. 142-43)

Plaintiff also received treatment for his diabetes and hypothyroidism at the JFK clinic of St. John's Mercy Medical Center. On January 3, 2005, Plaintiff complained of bloating and gas, as well as back pain. Dr. Martin Alpert assessed diabetes mellitus, hypothyroidism, heavy smoking, backache, and dyspepsia. (Tr. 264-65) Plaintiff continued to complain of back pain in March 2005, as well as numbness and tingling in his hands and feet. (Tr. 267-69) On May 26, 2005, Plaintiff complained of aching in his right hand. He rated the pain as a 9, and stated that nothing provided relief. Plaintiff also reported two episodes of hypoglycemia in the afternoon over the past 2 months. His blood sugar was in the 40s, so he adjusted his medication. Upon examination, Dr. Saad Hafidh noted Plaintiff's history of diabetes mellitus with diabetic neuropathy. Examination of the extremities revealed decreased sensation on the anterior aspect of the left leg. (Tr. 270-72) On August 18, 2005, Plaintiff complained of a couple of attacks of hypoglycemia and numbness and tingling in both hands. Dr. Hafidh noted that Plaintiff had developed end-organ damage and a formal diabetic neuropathy. In addition, Dr. Hafidh stated that the current regimen of hyperglycemic agents were not controlling Plaintiff's blood sugar, and Dr. Hafidh changed the regimen as a result. (Tr. 278)

An Assessment dated January 5, 2006, revealed that Plaintiff experienced pain in his legs twice a week. (Tr. 288) During his examination, Plaintiff reported having a lot of symptoms of numbness, tingling, and burning sensations in both hands and feet. He stated that he could no longer tolerate the pain and burning. Dr. Hafidh diagnosed diabetes mellitus, hypothyroidism, and diabetic neuropathy. Dr. Hafidh specifically noted that he was starting Plaintiff on Cymbalta and that he would refer Plaintiff for a neurologic consult if his condition did not improve. (Tr. 291-92) On March 16, 2006, Plaintiff returned to the clinic for a follow-up examination. Dr. Hafidh noted that Plaintiff

was feeling better, with less numbness and tingling in his hands and feet and well-controlled blood sugar. Dr. Hafidh assessed diabetes mellitus, diabetic neuropathy, and hypothyroidism. (Tr. 297) On May 12, 2006, Plaintiff reported recurrent attacks of hypoglycemia. Dr. Hafidh adjusted Plaintiff's insulin, and noted that he would defer changing Plaintiff's maximum dose of Neurontin for diabetic neuropathy until Plaintiff's diabetes was controlled. (Tr. 306-7) Plaintiff returned to Dr. Hafidh on July 6, 2006, complaining of swelling in his right big toe. Dr. Hafidh expressed concern over the possibility of osteomyelitis. He also wanted to rule out gout. Dr. Hafidh postponed adjusting Plaintiff's medications until he saw the results of Plaintiff's labs. (Tr. 309-10)

Plaintiff underwent a consultative examination by Dr. Musaddeque Ahmad on February 11, 2005. Dr. Ahmad could not elicit any deep tendon reflexes in any area; Plaintiff had no pain sensation in his lower extremity below the knee; and Plaintiff's vibration sense was remarkably diminished on both lower extremities. Dr. Ahmad assessed diabetic neuropathy; uncontrolled diabetes mellitus; pain in upper and lower extremities; depression and anxiety; and hypothyroidism. Dr. Ahmad found no limitations to Plaintiff's mental function. In addition, he opined that Plaintiff could sit for 2 to 4 hours without a break; stand for 2 to 4 hours per day with a break; lift and carry 20 pounds; walk ½ mile; and travel with transport. (Tr. 237-38)

### IV. The ALJ's Determination

In a decision dated March 22, 2007, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act through December 31, 2010. He had not engaged in substantial gainful activity since May 15, 2004. The ALJ further found that Plaintiff had the severe impairment of diabetes mellitus with neuropathy but that he did not have an impairment or combination of impairments that met or equaled a listing. In addition, the ALJ determined that

8

Plaintiff was not a credible witness regarding his limitations. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently. In addition, he was able to sit for six hours and stand and walk about two hours in an eight-hour work day. The ALJ further determined that Plaintiff could not climb ladders, ropes, and scaffolds, and that he should avoid exposure to hazards, including moving machinery and unprotected heights. (Tr. 19)

Although Plaintiff was unable to perform his past relevant work, the ALJ found significant numbers of jobs existed in the national economy which Plaintiff could perform based on his status as a younger individual, 11th grade education, RFC, and vocational factors. The ALJ noted that Plaintiff's non-exertional impairments did not significantly erode the light or sedentary occupational base. Thus, the ALJ concluded that Plaintiff had not been under a disability at any time through the date of the decision and was not entitled to disability insurance benefits or supplemental security income payments under the Social Security Act. (Tr. 19-20)

Specifically, the noted that Plaintiff had performed work after his alleged onset date, although the work performed in 2006 was not substantial gainful activity. The ALJ further noted Plaintiff's attorney's request to consider a later onset date of December 1, 2005. The ALJ found that Plaintiff's overall work history was inconsistent with his allegations of total disability. In addition, the ALJ noted Plaintiff's testimony regarding his blood sugar levels, neuropathy, and activities. The ALJ found that Plaintiff was not a fully credible witness regarding his limitations. (Tr. 13-14)

Further, the ALJ determined that the objective medical evidence failed to support Plaintiff's allegations. The ALJ assessed Plaintiff's medical records, noting Plaintiff's diagnoses of diabetic neuropathy and diabetes mellitus. The ALJ pointed out that Plaintiff's diabetes mellitus had only been

9

somewhat controlled with medication and insulin. Despite a ten-year history of numbness and tingling in his hands and feet, Plaintiff had been able to work consistently with that problem. Further, the ALJ noted that Neurontin improved Plaintiff's symptoms of numbness and tingling. Additionally, ER visits between May 2005 and October 2006 for low blood sugar did not occur more than one time per month. The ALJ also found Plaintiff's back pain to be non-severe, as the record failed to document any specific ongoing medication, treatment, or specialist referrals for chronic back pain. In addition, Plaintiff's hypothyroidism and gastritis were controlled with medication and were also non-severe. With regard to Plaintiff's allegations of depression and anxiety, the ALJ found that Plaintiff did not seek medication or treatment for any mental impairments and that he had no mental limitations in his ability to perform basic work activities. Finally, the ALJ noted that no physician opined that Plaintiff was disabled, referred Plaintiff to a neurologist or other specialist, or placed any specific, physical limitations on Plaintiff. (Tr. 15-16)

Further, the ALJ relied on forms completed by the Plaintiff to find that he was capable of performing many household chores and enjoying hobbies. Plaintiff's appearance and demeanor on the witness stand did not lend credibility to his testimony. The ALJ found that his hands were dirty, indicating that he may have been working prior to the hearing. In addition, Plaintiff was able to sit without difficulty and did not appear sluggish, tired, or weak after a 70 mile drive to the hearing. (Tr. 16-17)

The ALJ determined that Plaintiff's RFC demonstrated an ability to perform a wide range of light work and a full range of sedentary work, in spite of Plaintiff's complaints of leg pain, extremity pain and numbness, and episodes of hyper/hypoglycemia. The RFC was similar to the findings of the State agency consultants, and the ALJ noted that no treating physician had placed more significant

restrictions on Plaintiff. (Tr. 17-18)

Finally, the ALJ consulted the Medical-Vocational Guidelines, which suggested a finding of "not disabled" in light of Plaintiff's vocational factors and RFC for the range of light and sedentary work. Further, Plaintiff was able to perform activities requiring the use of arms and hands to grasp, hold, and turn objects. In addition, the ALJ found that Plaintiff's non-exertional limitations did not significantly erode the light or sedentary occupations base. Thus, the ALJ concluded that a significant number of jobs existed in the national economy which Plaintiff could perform, rendering Plaintiff not disabled. (Tr. 18-19)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42

11

U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI. Discussion

The Plaintiff argues that the ALJ erred in failing to find that the Plaintiff met the listing for diabetes with neuropathy under 9.08A. In addition, Plaintiff asserts that the ALJ erred in adopting the RFC opinions of a non-examining physician. Finally, the Plaintiff contends that the ALJ erred in the analysis of Plaintiff's credibility, including the ALJ's assessment of Plaintiff's non-exertional impairments of neuropathic pain and fatigue. The Defendant, on the other hand, maintains that the ALJ properly determined that Plaintiff did not meet the requirements of Listing 9.08A, properly evaluated Plaintiff's credibility, and properly set forth an RFC that was supported by substantial evidence.

The undersigned finds that the ALJ's determination is not supported by substantial evidence in that the ALJ failed to utilize a VE in light of Plaintiff's non-exertional impairments. The ALJ found that Plaintiff's severe impairment of diabetes mellitus with neuropathy limited his ability to work at

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

13

only the light and sedentary levels and that his non-exertional limitations did not significantly erode these occupational bases. (Tr. 19) In making his decision, the ALJ relied on the Medical-Vocational Guidelines ("grids") instead of consulting a VE. However, Plaintiff argues that his non-exertional impairments of pain and fatigue stemming from his diabetic neuropathy required the ALJ to hear testimony from a VE and precluded the ALJ from relying on the grids.

An ALJ may rely on the grids to find a plaintiff not disabled where the plaintiff does not have non-exertional impairments or where the non-exertional impairment does not diminish the plaintiff's RFC to perform the full range of activities listed in the Grids. Muncy v. Apfel, 247 F.3d 728, 735 (8th Cir. 2001) (citing Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999)). "However, when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability." Gray v. Apfel, 192 F.3d 799, 802 (8th cir. 1999).

Here, the ALJ determined that Plaintiff's non-exertional impairments of pain and fatigue were not credible because a one-time consultative examination with Dr. Ahmad in early 2005 indicated that Plaintiff could sit for 2 to 4 hours with a break, stand for 2 to 4 hours with a break, lift 20 pounds, and walk ½ mile. Additionally, the ALJ relied on Plaintiff's previous ability to work with his neuropathy and the fact that no treating physician indicated that Plaintiff was unable to work. The ALJ also found significant Plaintiff's appearance at the hearing, which included dirty hands and the ability to sit through the one-hour hearing without difficulty.

The undersigned finds that the medical records do not support this finding. Plaintiff received ongoing medical treatment from the JFK clinic at St. John's Mercy Medical Center. Plaintiff continuously complained of pain, numbness, and tingling in his hands and legs. Examination of his

14

extremities revealed decreased sensation in his legs and a formal diagnosis of end-organ damage and diabetic neuropathy. (Tr. 270-72, 278, 288, 291-92) Although medications lessened some of the numbness and tingling, Plaintiff continued to complain of hand and leg pain, along with recurrent attacks of hypoglycemia. (Tr. 297, 306-7) In the most recent treatment notes. Dr. Hafidh expressed concern over the possibility of osteomyelitis[2] in Plaintiff's foot, along with the possibility of gout[3]. (Tr. 309) Plaintiff was taking the maximum dose of Neurontin and amitriptyline. (Tr. 307) Further, Plaintiff's "failure to 'sit and squirm' with pain during the hearing cannot be dispositive of his credibility." Muncy, 247 F.3d at 736.

The undersigned finds that the ALJ erred in failing to elicit testimony from a VE regarding Plaintiff's ability to perform work existing in significant numbers in the national economy, despite Plaintiff's non-exertional impairment of pain from diabetic neuropathy. As a result, the ALJ formulated an RFC that was not supported by substantial evidence and then erroneously applied the grids. Therefore, the Commissioner's decision should be reversed and remanded to the ALJ to adduce testimony from a VE regarding Plaintiff's non-exertional impairments and their impact on his ability to perform jobs in the national economy. See Yeley v. Astrue, No. 1:07CV148 LMB, 2009 WL 736701, at *13 (E.D. Mo. March 18, 2009). On remand, the ALJ may also want to further develop the record by obtaining medical evidence from Plaintiff's treating physicians regarding Plaintiff's ability to function in the workplace. Id. at *12.

---

[2] "Inflammation of the bone marrow and adjacent bone." Stedman's Medical Dictionary 1391 (28th ed. 2006).

[3] "A disorder of purine metabolism . . . characterized by a raised but variable blood uric acid level and severe recurrent acute arthritis of sudden onset resulting from deposition of crystals of sodium urate in connective tissues and articular cartilage;" Stedman's Medical Dictionary 827 (28th ed. 2006).

Accordingly,

**IT IS HEREBY RECOMMENDED** that this cause be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

          /s/ Terry I. Adelman
    UNITED STATES MAGISTRATE JUDGE

Dated this  26th  day of August, 2009.